IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ESSENCE ALLEN-WRIGHT,                    :
                                         :
                Plaintiff,               :   CIVIL ACTION
                                         :
        vs.                              :   No. 07-cv-4087
                                         :
ALLSTATE INSURANCE CO.,                  :
                                         :
                Defendant.               :


MEMORANDUM AND ORDER

Joyner, J.                                        December 17, 2008

Background

        Plaintiff brings this action on behalf of herself and
similarly situated proposed class members.  Plaintiff seeks
certification of the following class:

> All property owners located within the Commonwealth
> of Pennsylvania who have been issued policies of
> insurance providing replacement cost coverage for
> damage to real property by Allstate Insurance Company
> and/or its subsidiaries, affiliates and/or related
> entities including but not limited to Allstate
> Indemnity Company and Allstate Property and Casualty
> Insurance Company ("Allstate") during the 6 (six)
> years prior to the filing of this Complaint, whose
> insured properties sustained a covered loss, where
> Allstate issued payment to the policyholders for
> repair of the covered loss but limited the payment of
> the contractor's overhead and profit to 5%.

Pl. Mot.  Plaintiff alleges that in 2003, Defendant All-State
Insurance began arbitrarily paying 5% overhead and profit for
general contractors, instead of the industry-wide standard of 20-

1

25%, to claimants covered under Allstate's replacement cost insurance policies.  Plaintiff alleges that they did so in breach of contract and in violation of Pennsylvania state law, 42 Pa. Cons. Stat. §8371 (2008) and 73 Pa. Stat. Ann. §201-9.2 (2008). Defendant denies that it pays 5% overhead and profit to general contractors and claims that the 2003 change in pricing resulted from a change in their internal pricing software.  Defendant further asserts that the new software resulted in different claim classifications, including a category that requires the use of a "specialty" contractor, who would receive 5% overhead and profit, and not a general contractor, who would receive 20-25% overhead and profit.  Defendant claims that the payments have remained "neutral" but have been computed differently.  Plaintiff seeks to certify this class for all clients who were "limited" to 5% "contractor's overhead and profit" in their claims.

Plaintiff originally filed this class action suit in state court, but it was removed to this Court pursuant to 28 U.S.C. § 1332(d)(2) on September 28, 2007.[1]  Plaintiff sought class certification by motion on October 8, 2008, and Defendant responded in opposition on November 7, 2008.

## Standard

---

[1]This Court has subject matter jurisdiction over the claims because, pursuant to 28 U.S.C. §1332(d)(2), the parties to this class action suit are diverse in citizenship and the matter in controversy exceeds $5,000,000, exclusive of costs and interests.

As this is a motion for class certification, this Court will accept as true the substantive allegations in the Complaint and will not inquire into the merit's of the plaintiff's claim. <u>Cullen v. Whitman Med. Corp.</u>, 188 F.R.D. 226, 228 (E.D. Pa. 1999); <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177-178 (1974).  Hence, this Court will focus exclusively on whether the plaintiffs have met the burden of proving the requirements as set out in Fed. R. Civ. P. 23 to constitute a class.  <u>Eisen</u>, 417 U.S. at 163.

First, "[a] prerequisite to a Rule 23 action is the actual existence of a 'class.'"  <u>Sanneman v. Chrysler Corp.</u>, 191 F.R.D. 441, 445 (E.D. Pa. 2000) (citing <u>In re A.H. Robins Co.</u>, 880 F.2d 709, 728 (4th Cir. 1989); <u>Clay v. American Tobacco Co.</u>, 188 F.R.D. 483 (S.D. Ill. 1999)).  Fed. R. Civ. P. 23(a) requires four initial elements to be sufficiently proven by the plaintiff in class action certification: numerosity, commonality, typicality and adequacy.  Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994); Barabin v. Aramark Corp., 210 F.R.D. 152, 157 (E.D. Pa. 2002); Sanneman, 191 F.R.D. at 445.  Additionally, the action must fall within one of the categories of Fed. R. Civ. P. 23(b), in this instance, Rule 23(b)(3), to be certified.  Id.  Fed. R. Civ. P. 23(b)(3) requires the predominance of common claims and the superiority of a class action as a method of adjudication. This Court undertakes a thorough examination of each of the

3

factors in Rules 23(a) and (b) to determine whether the class may
be certified.

Finally, we note that substantive state law of the law of
Pennsylvania will followed, as the claims arise under
Pennsylvania state law and "state law as announced by the highest
court of the State is to be followed by federal courts where the
underlying question is one of state law." Erie R. Co. v.
Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).


Discussion

1. Class Definition

As a preliminary matter, to be certified, the class must be
"sufficiently identified without being overly broad." Sanneman
v. Chrysler Corp., 191 F.R.D. 441, 445 (E.D. Pa. 2000).  While
this is a basic and liberal requirement, defendant alleges that
the verb "limits" within the class definition creates a problem,
in that to say that the contractor's overhead and profit was
"limited" would necessitate an individualized determination as to
whether a potential class member was entitled to more than 5%,
but was given only 5%.  Id.  In recent cases concerning overhead
and profit, Pennsylvania state courts have determined that
whether a claim should receive payment for general contractor's
overhead and profit (GCOP) is an individual determination
involving numerous case-specific factors to ultimately determine

4

whether the use of a general contractor was "reasonably likely."
Mee v. Safeco Insurance Co., 2006 Pa. Super. 257, 908 A.2d 344
(2006); Gilderman v. State Farm Insurance Co., 437 Pa. Super.
217, 649 A.2d 941 (1994).  If the use of a general contractor is
reasonably likely based on an individual assessment, then the
claim requires GCOP.  Id.  Hence, the definition, in so far as it
would require individual determinations of whose contractor
overhead and profit was actually "limited," is problematic.  It
appears that allowing certification of all members whose overhead
and profit was "limited" would necessitate the Court to determine
each member that was entitled, under replacement cost coverage,
to a general contractor's overhead and profit of 20-25%, but was
instead *limited* to 5% overhead and profit – a case-specific
investigation.  The problem inherent in the definition
foreshadows deficiencies with the requirements of Fed. R. Civ. P.
23(a)(3) and (4) and will be addressed accordingly.


2. Numerosity

     Plaintiff alleges that the claimants "limited" to 5%
contractor overhead and profit would be in the thousands.  Pl.
Mot. Brf. 11.  Defendants do not dispute that there are thousands
of persons covered by replacement cost coverage in Pennsylvania
who received 5% overhead and profit and has stipulated to this
factor.  Pl. Mot. Brf., Exh. N.

5

3. Commonality

To meet the burden of commonality, plaintiff must demonstrate that the named plaintiffs "share at least one question of fact or law with the grievances of the prospective class." Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) (citing In re "Agent Orange" Prod. Liab. Lit., 818 F.3d 145, 166-67 (2d Cir. 1987)).  The class members are not required to share all of the same claims and factual differences among the claims "do not defeat certification." Baby Neal, 818 F.3d at 56 (citing Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985); Troutman v. Cohen, 661 F. Supp. 802, 811 (E.D. Pa. 1987)).  Further, the differences between the individual claims of class members do not destroy commonality if  "it is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." Califano v. Yamasaki, 442 U.S. 682, 701 (1979). "It is not, however, sufficient merely to show a factual or legal question that must be answered for each class member. The proponent of class certification must show that class members share a common question whose answer is amenable to class-wide resolution." Exelon v. Gaston, 247 F.R.D. 75, 82 (E.D. Pa. 2007).  The U.S. Supreme Court has held that class action litigation is warranted when the issues "turn on questions of law applicable in the same manner to each member of the class." Gen.

<u>Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 155 (1982)

(quoting <u>Califano</u>, 442 U.S. at 701).

Plaintiff sets out common questions between class members to demonstrate the commonality requirement.  Pl. Mot. Brf. 12. Defendant, however, disputes commonality, arguing that while the proposed class members may rely on the same "theory" of recovery, the resolution of the questions set out would have to be done on a case-by-case basis, undercutting the purpose of class action litigation and negating commonality.

This Court agrees that the questions plaintiff presents would involve factual determinations that would beg this Court to make case-by-case determinations as to class membership and fails to see how any one question has an answer that is amenable to class-wide resolution.[2]  As noted, a claimant is entitled to GCOP

_____

[2]<u>Gaston</u>, 247 F.R.D. at 82.  Question (1) asks "[w]hether the classification of the claims of the plaintiff and class members as 'not very complex' by the Defendant is arbitrary and capricious[.]" To determine the complexity of any claim would require an individualized determination into whether a general contractor would have been reasonably necessary for each proposed class member and, therefore, would not be a common question. Questions (2), (3), and (4) involve questions of whether the payment of 5% overhead and profit is arbitrary and capricious, whether it is a breach of insurance contract and whether the 5% payment is in bad faith.  In each of these instances, some of the proposed class members could clearly have individual claims, if they were entitled to 20-25% GCOP, but were awarded only 5% – but attempting to ascertain which ones deserved the 20-25% would involve mini-hearings before the claims could be tried.  Question (5) asks "[w]hether the Defendant engaged in deceptive and/or unfair practices by instituting a claim adjustment procedure that results in lower claim payments to the plaintiff and class members without notice and without premium changes;" however, this Court could only determine that the adjustment procedures results in lower claim payments after reviewing whether the claims were those in which the use of a general contractor was reasonably likely and, therefore, those that should have been allotted 20-25% for GCOP.  Similarly, question (6) asks "[w]hether the Defendant violated Pennsylvania law by failing to determine whether its practices ensure payment of all costs that the plaintiff and class members are reasonably likely to incur in repairing or replacing

where use of a general contractor is reasonably likely; further, this determination must be made on a case-by-case basis involving a variety of indicia. <u>Mee</u>, 2006 Pa. Super. at ¶ 14; <u>Gilderman</u>, 437 Pa. Super. at 226.  In this instance, defendant contends that each class member has had an individualized assessment and, according to the defendant, it was determined that the use of a general contractor was not reasonably likely and that only a speciality contractor would be appropriate.  Plaintiff, however, contends that by using the term "contractor" and by allowing any overhead and profit, that the defendant has made the determination that the use of a *general contractor* is reasonably likely, but that Allstate has arbitrarily reduced the overhead and profit from a standard 20-25% to 5%.

If this Court accepts as true that Allstate is arbitrarily paying 5% instead of 20-25% overhead and profit for claims that are reasonably likely to use a general contractor, each class member would still be left to prove that, in fact, their claim deserved GCOP from the outset because a general contract was reasonably likely to be used – by its nature, an individual

_____

their property damages by an insured peril."  This question would necessitate
individualized inquiry into whether the plaintiff or class members received
payment for all reasonably likely costs, including whether a general
contractor was reasonably likely to be needed for the job, and therefore would
not be common among all identified class members.

8

inquiry.[3]   A class action must include common questions of facts or law to survive certification and in this case, it appears impossible to collect class members whose claim would be amenable to a class action without mini-hearings to determine which persons were entitled to 20-25% GCOP, but were "limited" to 5% overhead and profit.  See Klotz v. Trans Union, LLC, 246 F.R.D. 208, 217 (E.D. Pa. 2007) ("The potential efficiencies of a class action are not realized where an individual assessment of each putative class member's claims must be made."); Kline v. Sec. Guards, Inc., 196 F.R.D. 261, 272 (E.D. Pa. 2000) ("We conclude that because each member must prove liability and damages, individual issues will predominate over common issues of the litigation."); Forman v. Data Transfer, 164 F.R.D. 400, 404 (E.D. Pa. 1995) ("[C]ourts have been unwilling to find commonality where the resolution of 'common issues' depends on factual determinations that will be different for each class plaintiff.").  Allstate's liability might be different from one policy holder to another and there does not seem to be a common way to assess legal liability.  Thus, commonality has not been established.

4. Typicality

---

[3]Allstate continues to pay between 20-25% for GCOP on certain claims; hence, there is no contention that Allstate has stopped paying 20-25% for GCOP and started paying only 5% in every case.  Def. Resp., Exh. J.

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative part[y]" be "typical of the claims or defenses of the class[.]"  Typicality has been interpreted in "common-sense terms[,] . . . suggesting that the incentives of the plaintiffs are aligned with those of the class."  <u>Beck v. Maximus</u>, 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting <u>Baby Neal</u>, 43 F.3d at 55).

> . . . Plaintiff has satisfied Rule 23(a)(3) if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory. Of course, when this is true the standard under subdivision (a)(3) is closely related to the test for the common-question prerequisite in subdivision (a)(2). On the other hand, Rule 23(a)(3) may have independent significance if it is used to screen out class actions when the legal or factual position of the representatives is markedly different from that of other members of the class even though common questions of law or fact are raised.

<u>Weiss v. York Hospital</u>, 745 F.2d 786, 810 (3d Cir. 1984) (quoting 7 Wright & A. Miller, Federal Practice and Procedure § 1763, at 614 (1972)).  Finally, the Third Circuit has held that, "[w]here an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."  <u>Baby Neal</u>, 43 F.3d at 58 (citing <u>General Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 157-59 (1982)).  In this instance, while all of the class members under the proposed definition received 5% contractor's overheard and profit, to establish typicality, plaintiff should show that

10

all of these members suffered some form of injury due to the challenged practice.  In the proposed class, it is unclear if any injury has resulted for some class members who would be swept into the definition.[4]  For example, a claimant receiving 5% overhead and profit for a speciality contractor may simply not have had a claim where the use of a general contractor was reasonably likely under the standard set out in Mee and Gilderman and was never entitled to 20-25% GCOP.  Thus, even if the named plaintiff, Allen-Wright, proves that she was entitled to GCOP and that Allstate did not fairly ensure that her losses were covered and breached the contract, this determination would not necessarily indicate that *any* of the other class members were also entitled to GCOP.  Plaintiff's factual and legal positions may be entirely different from the other members of the proposed class; hence, the plaintiff's claim is not typical of the class as a whole.

Typicality also encompasses another consideration, that of defenses that may be unique to the named plaintiff.  "Courts of appeals have held that unique defenses bear on both the

_____

[4]Plaintiff contends that the fact that Allstate's overall loss ratio dropped from 73%, during 1987-1996, to 59%, from 1997 to 2006, could lead a Court to conclude that each proposed class member receiving 5% overhead and profit, had been receiving 20-25% before 2003, but was now being restricted. This Court fails to see how an overall loss ratio from the company as a whole that spans over two decades would preclude the Court from having to individually determine whether, in fact, those proposed class members who received 5% were persons who would have received 20-25% before 2003.

typicality and adequacy of a class representative." Beck, 457
F.3d at 297 (citing cases from the Second and Seventh Circuits
discussing unique defenses in class actions).  If the
representative faces challenges unique to himself, "the
representative's interests might not be aligned with those of the
class, and the representative might devote time and effort to the
defense at the expense of issues that are common and controlling
for the class." Id.  The Third Circuit has articulated the
standard for such a unique defense to be that "[a] proposed class
representative is neither typical nor adequate if the
representative is subject to a unique defense that is likely to
become a major focus of the litigation." Id. at 301.  Defendant
alleges that plaintiff is subject to the unique defense that she
failed to mitigate her damages and provides Plaintiff's
deposition testimony in support.  Def. Resp., Exh. O; Exh. K
(Policy).  Defendant also alleges that Allen-Wright lacks
standing to sue and did not justifiably rely on any
misrepresentations made by Allstate.[5]  The possible unique
defenses underscore the lack of typicality of the class
representative.

　　　　Plaintiff has failed to meet the requirements of typicality.


5.Adequacy

---

[5]These claims are addressed in Allstate's Motion for Summary Judgment.

The final prong of Rule 23(a) is that of adequacy.  To be an adequate class representative, the plaintiff must demonstrate that her interests are sufficiently aligned with those of the absent class members and that the class counsel is qualified and will serve the interests of the class.  Georgine v. Amchen Products, 83 F.3d 610, 630 (3d Cir. 1996).  Apart from the unique defenses described above in Part 4, defendant has not challenged Allen-Wright's adequacy, nor the adequacy of proposed class counsel, Mr. Wheeler.  Hence, as it appears that no conflict would exist outside of the possible unique defenses, the requirement of adequacy would not defeat certification.


6. Rule 23(b)(3)

    Plaintiff brings this action under Rule 23(b)(3).  Rule 23(b)(3) class actions are appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy."

    a. Predominance

    Plaintiff contends that the central issue to the action is "whether the defendant's practice of paying only 5% for contractor's overhead and profit is arbitrary and violative of Pennsylvania law."  Pl. Mot. Brf. 16.  Plaintiff holds that this

"common" central issue relates to all three causes of action
(breach of contract, bad faith and consumer protection) and
predominates the class action.  While factual differences will
not defeat predominance, "[a]ny individual differences . . . must
be of lesser overall significance than the common issues, and
they must be manageable in a single class action." See Chin v.
Chrysler Corp., 182 F.R.D. 448, 453 (D.N.J. 1998).  Though this
Court has determined commonality does not exist, we will
nevertheless examine each claim in turn to assess the
predominance of commonality.

     To prove breach of contract, as there is no actual mention
of contractor's overhead and profit in the contract itself,
plaintiff would have to prove that her contract was breached
because Allstate failed to give her the amount owed under the
insurance policy, in that they gave her only 5% overhead and
profit, when she was entitled to 20-25%.  Def. Resp., Exh. K.
The plaintiff states, "[p]roof that Allstate breached its
contract with Allen-Wright would also prove that Allstate
breached its contract with all class members."  Pl. Mot. Brf. 17.
However, proof that Allstate breached its contract with Allen-
Wright does not necessarily tend to prove that Allstate breached
its contracts as to other class members because, based on their
case-by-case evaluations, the use of a general contractor may not
have been reasonably likely for any of the other class members,

14

even if it was reasonably likely for Allen-Wright.  The contract
itself makes no mention of any contractors or contractor's
overhead and profit, leaving each claim to be determined
individually.  See Def. Oppos., Exh. K.  Hence, there is no
predominant question that could be answered among class members
as to breach of contract.

Similarly, plaintiff argues commonality under an insurance
bad faith cause of action, pursuant to 42 Pa. Cons. Stat. § 8371
(2008), alleging that Allstate unfoundedly refused to pay
benefits owed under contact out of self-interest.  Plaintiff
argues that bad faith resulted when Allstate "restricted"
payment.  However, even if it was proven Allstate acted in bad
faith towards Allen-Wright in paying only 5%, there would be no
indication that Allstate acted with bad faith towards any other
class member who also received 5% speciality contractor's
overhead and profit unless this Court were to review *each* claim
for restrictions.

Finally, plaintiff alleges predominance in a consumer
protection cause of action pursuant to the Unfair Trade Practices
and Consumer Protection Laws ("UTPCPL") 73 Pa. Stat. Ann. §201-
2(4)(xxi), which provides a private cause of action for deceptive
conduct.  In order for a private actor to succeed under this
provision, he must prove the elements of common-law fraud,
justifiable reliance, causation and damages.  Colaizzi v. Beck,

15

2006 Pa. Super. 41, ¶8, 895 A.2d 36, 39 (2006) (quoting <u>Sewak v. Lockhart</u>, 699 A.2d 755, 761 (Pa. Super. 1997)).  Indeed, in a recent class action, the Third Circuit held that the named plaintiff "must allege . . . that he and other putative class members justifiably relied on [the defendant's] deceptive conduct."  <u>Hunt v. United States Tobacco Co.</u>, 538 F.3d 217, 229 (3d Cir. 2008).  Thus, justifiable reliance of each member must be established under 73 Pa. Stat. Ann. §201-2(4)(xxi).  <u>Kondtratick v. Beneficial Consumer Discount Co.</u>, No. 04-8495, 2006 WL 305399, at *7 (E.D. Pa. Feb. 8, 2006)("UTPCPL claims are not amenable to class treatment because of this need for an individualized inquiry into the proof of reliance, causation, and damages for each class member." (citing <u>Debbs v. Chrysler Corp.</u>, 810 A.2d 137, 157-58 (Pa. Super. 2002)); <u>Dawson v. Dovenmuehle Mortg., Inc.</u>, 214 F.R.D. 196, 201 (E.D. Pa. 2003) ("Because reliance is an essential element that must be proven in UTPCPL claims and other state consumer fraud claims, the court finds that individual questions of law and fact predominate over any common questions with respect to the pending claim, thereby precluding class certification pursuant to Rule 23(b)(3).").  Hence, this Court would ultimately have to determine whether each class member justifiably relied on the defendant's conduct to advance the claim, in direct opposition to the commonality requirement.

16

Plaintiff argues that this analysis would be unnecessary because the relationship between insurers and insureds is that of a fiduciary, and as such, the reliance can be presumed.  To support the contention that a fiduciary duty exists between insurer and insured, plaintiff cites to Romano v. Nationwide Mutual Fire, 435 Pa. Super. 535, 550 (1993), which cites to Gray v. Nationwide Ins. Co., 422 Pa. 500, 504 (Pa. 1966), for this proposition.  However, in both cases, the insurer had affirmatively taken on the confidential relationship.  The court stated, "by asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured."  Gray, 422 Pa. at 504 (quoting Gedeon v. State Farm Mutual Automobile Ins. Co., 410 Pa. 55, 59, 188 A. 2d 320, 322 (1963)).  Specifically, "[t]he insurer assumes a fiduciary duty when it asserts a stated right under the policy to handle all claims against the insured, including the right to make a binding settlement."  Connecticut Indem. Co. v. Markman, No. 93-799, 1993 U.S. Dist. LEXIS 10853, 1993 WL 304056, at *5-6 (E.D. Pa. Aug. 6, 1993) (citing cases).  Because a fiduciary relationship is created only in certain circumstances,  "under Pennsylvania law, insurers generally do not owe a fiduciary duty to their insureds."  Smith v. Berg, No.

17

99-2133, 2000 U.S. Dist. LEXIS 4513, 2000 WL 365949, at *14-15 (E.D. Pa. Apr. 10, 2000) (citing cases).

Hence, without extraordinary circumstances, it cannot be determined that each class member is in a fiduciary relationship with Allstate by virtue only of the contract.[6]  To investigate whether a fiduciary relationship existed between each class member and Allstate would lead this Court down the road of additional individualized determinations as to each class member's relationship to Allstate and would not relieve the burden of assessing each claim for justifiable reliance.  Thus, the solution would contain the same individualized burden as the problem that plaintiff purports to solve.

Overall, the predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a)(2).  In re LifeUSA Holding, 242 F.3d 136, 144 (3d Cir. 2001) (citing Amchen Products v. Windsor, 521 U.S. 591, 623-24 (1997)).  In this case, determining which class members could raise these causes of action would require extensive individual analysis as to each of their claims.  Thus, liability could not be determined for the whole, only for each individual class member.

Common claims do not predominate over individual questions.

---

[6]This Court further notes that there is no contention that Allen-Wright ever sought counsel or advice from Allstate or any of its agents regarding overhead and profit and was represented by her own public adjuster throughout the process.  Def. Resp., Exh. O.

b. Superiority

Plaintiff also bears the burden of showing that class action litigation would be superior to other methods of litigation. Fed. R. Civ. P. 23(b)(3).  Where a court finds that a lack of predominance, as we do here, it is often the case that the court also finds a class action is not the superior method of litigation.  Kline v. Security Guards, Inc., 196 F.R.D. 261, 273-74 (E.D. Pa. 2000).  As we find that individualized inquiries would be needed to even compose the class, it appears to this Court, then, that a class action is not the superior method to litigate whether Allstate insureds were arbitrarily "limited" to 5% overhead and profit.  It follows that the mini-hearings needed to determine class membership and, potentially, the additional hearings needed to determine the expectations or reliance of individual class members would make this class unmanageable.

In support of superiority, Plaintiff argues that the damage awards for each individual claim would be small (at approximately $2,500.00) and therefore it would be unlikely for individuals to retain attorneys and litigate.  Defendant, however, asserts that insureds can demand appraisals to challenge the estimate under the contract or under 40 Pa. Stat. Ann. §636, bring administrative complaints in line with 40 Pa. Stat. Ann. §1171.5(a)(11) or 31 Pa. Code § 59.12, or bring individual actions against the insurance company.  Defendant also asserts that numerous such individual

19

actions are often commenced and litigated in arbitration.

We find that trying this class action would be unmanageable and is not the superior method to litigate the claims at issue.


## Conclusion

As the Plaintiff has failed to establish commonality, typicality, predominance and superiority, as required by Fed. R. Civ. P. 23, this Court denies class certification.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
ESSENCE ALLEN-WRIGHT,              :
                                   :
              Plaintiff,           :    CIVIL ACTION
                                   :
        vs.                        :    No. 07-cv-4087
                                   :
ALLSTATE INSURANCE CO.,            :
                                   :
              Defendant.           :
```

<u>ORDER</u>

AND NOW, this   17th    day of December, 2008, upon consideration of Plaintiff's Motion for Class Certification (Doc. No. 27), and Defendant's Response in Opposition (Doc. No. 31), and for the reasons set forth in the attached Memorandum, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

s/J. Curtis Joyner_____
J. CURTIS JOYNER, J.